Good morning, Your Honors. I'm Brett Switzer from the Federal Defender's Office representing Mr. Wright. At this time, I'd like to reserve three minutes of my time for rebuttal. That request will be granted. Thank you, Your Honors. The dispute in the District Court was whether a loss enhancement is proper under the counterfeiting guideline. The Probation Department, government, the District Court all said that was fine. Mr. Wright said no, the counterfeit guideline applies only a face value enhancement, and if the District Court sees this as primarily a fraud case, then it should be driven by a loss calculation, then it needs to sentence under 2B1.1 the fraud guideline in its entirety. Now, the government on appeal in its brief concedes that a loss enhancement under the counterfeit guideline would be improper, and says that the District Court in fact did a to Gunter departure based on loss. So I believe the issue really, as it's been boiled down in the briefs, is that in fact what happened in the District Court, and if so, is there a problem with that? Well, assume for the sake of discussion that the record doesn't show that that happened, that the record shows that the District Court overruled the objection put forward by Mr. Wright, and at step one in calculating the guidelines, applied the enhancement even though the face value of the money was $400. Let's just for the sake of discussion say that that's how we read the record. Since the District Court said in the next breath, this is what I'd be giving you anyway, is that procedural error harmless? Are we elevating form over substance to send this back to the District Court because what should have happened at step two happened at step one? It's not, Your Honor. This Court has set forth quite clear guidelines on how to, how a District Court is to handle a so-called alternative sentence. And how a District Court is supposed to do that is it is supposed to go through a separate Gunter analysis, calculate the extent to which a District Court would be justified, and on the record justify a departure from that alternatively lower range. And none of that happened. And the reason for asking a District Court to do that at step two is so that it's subject to appellate review, right? That's correct, Your Honor. So if we understand what the District Court was doing, even though it happened at step one, well, let me put it to you this way. What would the District Court say differently if we sent this back? I mean, assuming that you're right and this was error, procedural error, what would we be asking the District Court to do or say differently than he said when he expressed, look, this is really about the fraud piece of this, not about the face value of the money, and so I'm going to look at what the amount of the fraud in issue was. The problem, Your Honor, when there's short shrift given to the procedure in the District Court, as the assumption is here on your hypothetical, then the District Court never takes a hard look at whether a departure would be proper. And a departure is not proper here. A departure is legally impermissible here, and that's because the Commission took a look at 472, which is the offense of conviction here, which is possession of counterfeit instruments with the Commission itself in Appendix A said, well, this could cover traditional fraud-type cases and it might also cover traditional counterfeit-type cases. Why can't a court depart at any case at step two instead of step one? I'm sorry, Your Honor? If the court wanted to, appropriately, why couldn't a court at any time depart under step two if it wanted to? A loss departure under step two here is improper because the whole basis of a loss departure is that, well, you know, the guidelines here don't properly account for loss in this case, so I need to depart. And that's just not true because the error here is that the guidelines say if the district judge looks at a case under 472 and decides this is really a fraud case, not so much a counterfeit case, that loss should apply, a loss calculation should be done, it's to go to 2B1.1, and there the base offense level is lower than under 2B5.1. But either under 1 or 5, why can't a court depart? Your client here really wanted to steal $100,000, not a few hundred dollars. Then the district court should have applied 2B1.1, should have calculated the base offense level to be lower than 9, and then applied an 8-level enhancement, and that would have led to a lower guideline range than was calculated by the district court. Now, on the departure, there was no motion to depart here, was there? There was no motion whatsoever. The word departure was never mentioned. Can a district court depart sua sponte without a motion? I believe it could, Your Honor, sure. They do it all the time. Yes. Well, I'm not sure they do it all the time. They vary. But can they depart sua sponte without a motion? I can't find a we've written on that anywhere. I think it's debatable. I don't know that there, I mean, certainly the better practice would be a notice requirement for that, and there may very well be one. In reality here, I think there absolutely was no departure in the district court, and moreover, there was, even if the record could be read that way, it's just plainly erroneous under the 1B1 procedure for how to sentence a 472 case. And the judge here reading the record, the judge, it's a fair reading of this record to say that the judge was stumped by the fact that this wasn't really your traditional counterfeit case. We agree with you when you say that the judge had properly departed at step one and should have done it, if at all, at step two. Do you have any problem with the fact that if it goes back to the district court, whether depending upon how the district court looks at this, it could have a first step analysis and say, he's going to sentence under 2B5.1 or 2B1.1, either provision? Well, the district court would have to choose a guideline. Between those two guidelines. Okay, it's between the two guidelines. We think the way this case was presented to the court was charged, this was not charged as a wire fraud, it was charged as a 472. The government argued 2B5.1. We think it would be proper to apply 2B5.1 here and just not apply an enhancement. Now, what the judge does at step three, that's another matter not before this court at this point. Now, there's certainly an argument that 2B1.1 ought to apply instead. But if it does apply, then the base offense level has got to be calculated. How about 2B5.1? You say there's an argument it could be applied. Sure, yes, Your Honor. Particularly how the case was presented and charged. Yeah, this is something for the district court to determine whether or not it views it as a 5.1 or 1.1. That's right, Your Honor, and either way it has to go back. Now, is it your position that if it goes back, the judge could not at step two depart? If the judge applies 2B5.1, a step two departure for loss would be improper. Why? Because the mechanism that the guidelines provide for accounting for fraud loss for a 472 conviction is application in toto of the 2B1.1 guideline. That's Appendix A. The first step, when you look, when you go to Section 1B1.1 and you look at the order the district court is supposed to do things, the first thing the court is supposed to do is pick the appropriate guideline for the offense conduct. You can always depart at step two, though, can't you? I mean, what does 5K2 mean if it doesn't mean that there are unidentified circumstances and that the district court is free to recognize them and to make a judgment about that? The commission identified these circumstances in Appendix A, and it said a 472 case might be a fraud-type case, might be a counterfeiting-type case. And if it's a fraud-type case, it's a mandatory requirement under Appendix A that the court apply 2B1.1. Now, you can look at this case. Do you have any law supporting the notion that a case like that, a 471 case, is exempted from 5K2? There's never been, and trust me, Your Honor, I've looked, and I could be proven wrong, but certainly the government hasn't cited a case, and I haven't found any, where there's ever been a lost departure under 472. All right. And the district court judge made it clear that he thought this was something that hadn't been anticipated. I mean, he's expressed about that, right? The district court was simply wrong, Your Honor. I think what happened here was the district court never looked at Appendix A, and I believe the government overlooked that as well in their brief, and saw that for a 472 violation, the commission recognized that there might be some cases that sound like fraud. And for those cases, you apply 2B1.1. You don't sort of take the most, the harshest elements of 2B5.1, namely the base offense level, combine that with the harsh element of 2B1.1, the loss enhancement, put them together. There are no Frankenstein guidelines here. I mean, you can't pick and choose and put together. And the commission recognized that in Appendix A, and I believe that's where the error started in the district court. Unless the court has any other questions, I'll see you in a little bit. Mr. Zosmer. Thank you very much, Your Honor. Good morning. May it please the court. I'm Robert Zosmer on behalf of the government. To answer Judge Stewarden's question specifically, what would the court say differently if this were sent back? The court would say the word, depart, which it did not say. But what it did say, very clearly on the record, is it said I don't think there is any question that the sentencing commission never anticipated the situation that we have before us. This is something new. Okay. Now respond then to Mr. Schweitzer's assertion that this isn't something new and the government has ignored the appendix and the judge just missed it. Well, it is different from anything that's in the guidelines, and here's why. And it'll take me a couple minutes to explain this because it's technical, but with the court's indulgence. The guidelines are set up. It does give a choice of two different guidelines. 2B5.1 is addressed to counterfeiting, and 2B1.1 is ordinary fraud. The commission has clearly made the decision that counterfeiting is worse. It's an aggravating factor. At any amount of money, the guideline level for counterfeiting is two levels higher than for the same amount of money involved in an ordinary fraud. So the commission says if you're involved with counterfeited, altered, forged currency, that's an aggravating factor, even though at bottom, of course, counterfeiting is a fraud. It's an effort to pass something that isn't what it is to get merchandise or goods or services that you're not paying for. But there's that aggravating factor that leads to a higher offense level. Now in this case, we have elements of both. We have the use of altered currency in that Mr. Wright and his compatriot were using four altered United States $400 bills. We know the facts, but to Mr. Schweitzer's point, that would be true of every case, wouldn't it, in which the court, if he's accurate in asserting what Appendix A says, that the sentencing commission recognized that some cases involving counterfeiting actually sound in fraud, and in those instances you should look to 2B1.1. That's his assertion about what Statutory Appendix A means. How can it be said that this is something that the sentencing commission never thought of? Because here we've got a case that sounds in fraud, it involves counterfeiting, and they talk about that in Appendix A. Well, it's simply wrong and reading way too much into Appendix A to say that this represents a judgment regarding black money, which I think we could all agree is a sort of novel fraud that the sentencing commission wasn't directly addressing. It does say 2B1.1 or 2B5.1, but the notion that my friend Mr. Schweitzer posits that you cannot have a departure from Appendix A is simply wrong. The history of that is it actually started from a case in the Third Circuit. There was a case in the late 90s. I think it was called Santos, but I can't tell you that for sure, but it involved the money laundering guideline, and this court held that a district court had discretion to look for the right guideline regardless of what it said in Appendix A, and the sentencing commission promptly amended the guidelines to essentially reject what this court and other courts had held and say no, you always start with Appendix A. You must calculate the guideline that's stated in Appendix A, and then if there's something different about the case, of course the normal departure provision applies in the exact circumstance that Judge Savage identified where it's something the commission just didn't contemplate. So it reads far too much into Appendix A to say that it's a mandatory provision from which there cannot be a departure. That's simply wrong under the history of the guidelines and how this has all come about. But you agree in this case that the judge improperly departed Step 1 and should have, if at all, if he wanted to, he should have departed Step 2. Yes, and we think as a matter of substance over form that the court did depart at Step 2, that if I were to... That's not what the court said. It didn't use the word departure, Your Honor. But it did say... Did anyone... Did you make a motion to depart or did the court say it was going to depart? We did not make a motion to depart, and obviously from the position that I'm taking on appeal, I'm acknowledging that the government's position here lacked the clarity that we would like it to have. But what we're here to do is review what the district court did. And what the district court said was, I don't think there's any question that the commission never anticipated this. My submission to this court, I agree it's not the clearest record. I don't want to oversell this to the court. But my submission is that if I were to stop any criminal law practitioner or a judge on the street and say, pop quiz, judge said, here's a question that the sentencing commission never anticipated. What's the judge talking about? The answer is departure. That defines a departure, simply without using the word. Well then, wouldn't the district court judge have had to have, in fact, upheld the objection and then departed? That would make for a clearer record. Those are the words that are absent from the record. But the effect of what the judge did, we submit, is very clear. And we also submit that it's almost inescapable that it's the right result in this case. The sentence, as Mr. Schweitzer has suggested, this gentleman, for a $400 case, is outrageous. That's not what this case was. This was an effort to steal $100,000 from people they were trying to do. Does our post-Booker jurisprudence allow for us to uphold this sentence where the word departure wasn't used? Or does, in fact, what happened here fall into the realm of procedural unreasonableness? No, I think that this court could uphold it. This case is on the line, obviously, as I've acknowledged. But this court said in Cooper, and in a number of other cases, that it's not going to hold a district court to specific exact language. This court has recognized that sentencing decisions, like any district court decision, take place on the fly, and there won't always be the same precision of language that one would find in a written opinion. And I think consistent with that precedent of this court, that this court can certainly affirm in this instance where, again, the judge stated the exact definition of a departure simply without using the word. Well, talk to us about the Smalley case, if you would. Smalley, because in effect what you're telling us is this is harmless error, right? I mean, when you say this record isn't that clear, the problem I'm having is I think it's pretty darn clear. It's pretty clear that at step one he said, this is what I'm doing, and you're not supposed to do that at step one. So for all your effort to say, well, what he really meant was, aren't you really saying it's an error but it's harmless? Well, that's not the argument I've been trying to make. If that's where I'm left with, Your Honor, then that's where I am. But, no, I think that the court used the exact terminology of a departure and simply didn't mention the label. That's our position. The question then is, can this be harmless? Again, the answer would have to be yes, given that it's so clear what the judge said. Smalley is different, and Smalley we actually agree with the defense view, and it speaks to another issue, which is later on in the sentencing proceeding, the judge says, and by the way, I'd give the exact same sentence, regardless of this eight-level increase. Smalley speaks directly to that, and we acknowledge that it rejects that. The court would have to go through the three-step process as to the alternate sentence without the eight-level enhancement. So if we disagreed with you about the import of the record, and we saw it as the district judge doing at step one something he was required to do at step two, you'd acknowledge that the case has to go back? Oh, certainly. If the court finds procedural error, we will go back. And it's not a tremendous burden. Our obligation is to defend the district court's judgment if we think that there's a basis for it in the record. But certainly if this court believes that it's best to do this again, then we will do that again. I also wanted to address Judge Fischer's question about whether a court can depart sua sponte. The answer is yes, but the court is required to give notice. And so that would be, based on the position I'm advocating to the court, that is another aspect of error here, which the defense has not raised. The court is required to give advance notice of a departure. It's in Rule 32. It is not required to give advance notice of a variance, which the Supreme Court has directly held. And so there could be an objection here that the court did not depart. It would be subject to review for plain error. And there is no plain error because what the judge did in giving this exact eight-level enhancement was certainly well aware to everybody. Everybody was well aware of it. Nobody came into this hearing unaware of what was at issue. And so I perhaps understand why the defense has not argued that. But to be completely open and honest, that is, I think, the answer to Your Honor's question. But again, I want to get back to my most important point with the minutes I have left, which is that this case does not involve only altered currency, and it does not involve only fraud. It involves both. And that's what makes it unique. That's why the district judge was right when he said the commission hasn't addressed this. If all the defendants did was come in with a box of black paper and say, here's $100,000 of U.S. currency. Would you like to buy it from us? That would be only fraud. They did more than that. They came in with altered U.S. bills and played around with these $100 bills to try to perpetrate their fraud. That's where 2B5.1 comes in and says you are going to get that extra bump that because of the aggravating factor of using and altering United States currency. So that's why when you just look at Appendix A, it doesn't get you to this case. Appendix A perhaps suggests that use 2B1.1 where it's just a fraud involving fake documents. Use 2B5.1 where it just involves counterfeiting. But what do you do when it involves both? And that's where the district judge here said, I don't think the sentencing commission has addressed this. But if they had, it's pretty obvious what they would do. They would apply the bump from 2B5.1 because we have altered currency, and they would use the loss table because of the fraud that's going on here. That's why this is a perfectly reasonable outcome. And I would submit the outcome is going to be exactly the same if we go back on remand. And maybe now I am sounding like harmless error in saying that. But that is the fact. The fact is these gentlemen tried to rip people off for $100,000, and we can't imagine that the district judge, based on what it said or anything else it's going to say, is going to sentence this as if it were a $400 case because it's not. Unless the court has further questions. Thank you very much. Thank you, Mr. Zosmer. Mr. Schweitzer. Thank you, Your Honors. This isn't a $400 case. But that doesn't mean you monkey around with the guidelines calculation. The court is perfectly well-suited on appeal to look at this case and say, I'm going to apply 2B5.1, and I'm going to account for some unusual circumstances here at Step 3. And then we'll see what happens there. The court could also say, and appropriately probably, that 2B1.1 applies, and I'm going to apply the enhancement properly. But we shouldn't be mistaken here. This is not a situation where Mr. Wright is trying to come in and play fast and loose and find a crack in the guidelines so that he doesn't get a guideline sentence that the district court thinks would otherwise be appropriate. That's just not what's at issue here. Mr. Zosmer says there's a lot of talk in this case about this is unique, this is unusual. It's not really unusual at all. I mean, the black money aspect of this, the particular facts, doesn't come up tremendously amount. There's probably half a dozen cases reported on it. But really the issue is, is it so unusual for a counterfeiting-type activity to be sentenced under the fraud guideline? Not at all. If this court were to look at 1341, the classic mail fraud statute, that statute prohibits expressly counterfeiting frauds. When you read past the money or property, all the language that everyone's familiar with, 1341 itself is fundamentally a counterfeiting statute as well. So those cases are sentenced under 2B1.1 all the time. So there's just – Respond, if you would, to Mr. Zosmer's assertion that there is an aggravating aspect whenever counterfeiting is involved. And that's why you've got the specific counterfeiting guideline, and that's why it's appropriate to start from that base level. This is something that is perfectly within the realm of reasonableness for this court to approach it that way. If we were looking at is the ultimate sentence here reasonable because there was an aggravating factor, I don't have an argument with that. But that doesn't mean that you get to sort of pull together different pieces of guidelines and apply a guideline range that just doesn't exist. Now, as to the harmless error, I think, Your Honor, the court has held since Booker that an error in the guidelines range sends the case back, regardless of where the sentence is, below, above, in the middle. And it would require a lot of overturning to find this error harmless. Thank you, Your Honor. Thank you. Thank you, Mr. Schweitzer. We thank both counsels for well-stated arguments, and we'll take the matter under advisement.